UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Tolleena M. Panosian,

                        Plaintiff,                      05-CV-0449T[1]

v.                                                      DECISION
                                                        and ORDER

JOANNE B.BARNHART,
Commissioner of Social Security,

                        Defendant.

_____


INTRODUCTION

        Plaintiff, Tolleena Panosian ("Panosian") filed this action

pursuant to the Social Security Act, codified at 42 U.S.C.

§§ 405(g) and 1383(c)(3), seeking review of a final decision of the

Commissioner of Social Security ("Commissioner"), denying her

application for Disability Insurance Benefits ("Disability"), and

Supplemental Security Insurance ("SSI").   On May 8, 2006, the

Commissioner moved for judgment on the pleadings pursuant to Rule

12© of the Federal Rules of Civil Procedure.   On February 4, 2007,

plaintiff filed a brief in opposition to the motion for summary

judgment.

        For the reasons that follow, I find that the Commissioner's

decision is supported by substantial evidence.   Accordingly,

defendant's motion for judgment on the pleadings is granted.

BACKGROUND

_____

        [1]This case  was transferred to the undersigned by the Honorable Richard J. Arcara, Chief
Judge, United States District Court, Western District of New York, by Order dated April 5, 2007.

Panosian applied for disability benefits on May 28, 2003 claiming that she was disabled because of depression and other emotional problems. (Tr. 45-46, 51) By Notice dated August 22, 2003, plaintiff's claim was denied. (Tr. 24-27) Plaintiff appealed this decision, requesting a hearing on October 3, 2003. (Tr. 28) Following a hearing held on January 13, 2005 during which plaintiff, her mother and a vocational expert testified and plaintiff was represented by counsel, the ALJ found that plaintiff was not disabled by decision dated February 8, 2005. (Tr. 13-20) After the Appeals Council denied plaintiff's request for review on April 21, 2005, the decision became final and plaintiff commenced this action on June 22, 2005. (Tr. 4-5)

<u>DISCUSSION</u>

Panosian is a 32 year old female with a high school education. (Tr. 45, 52) Her past work history includes working as a cashier in a grocery store, work at the Salvation Army re-merchandising clothes and answering telephones. (Tr. 52, 85) Plaintiff had been treated by therapist Angie Delgosha since May, 2001 for counseling and therapy. She also was treated by Dr. Jin Rhee for emotional problems since November 2001. (Tr. 54) At the time of her application, she was taking Lexapro for anxiety and depression and Topamax as a mood stabilizer. (Tr. 54)

At the time of her application, Panosian described her daily activities as taking care of her baby and attending a work program.

(Tr. 74)   Plaintiff's mother helped her and the baby by driving
them, babysitting and purchasing baby needs. (Tr. 74) Plaintiff
prepared meals, cleaned and took care of laundry and yard work.
(Tr. 76) Panosian claimed that she avoided going out especially
alone as she became panicky and nervous. (Tr. 76) Panosian also
stated that she had difficulty getting along with her boss because
she could not obey orders. (Tr. 79) Panosian felt that she could
not remember lists of tasks to do and depended on her mother to
remind her to take medication, get to doctors' appointments and pay
bills. (Tr. 78-80)

Plaintiff first sought treatment in November, 2001 at the
Niagara Falls Memorial Medical Center outpatient mental health
clinic for depression and anxiety. (Tr. 128-139) Plaintiff was
diagnosed with dysthymic disorder and prescribed Paxil. (Tr. 131)
A clinical social worker, Kathleen Kaufman, evaluated plaintiff on
December 31, 2001 and found that Janosian was not impaired in her
self care, social functioning, activities of daily living, economic
self-sufficiency, self direction nor ability to concentrate.
(Tr. 127)

Dr. Rhee began treating plaintiff on December 21, 2001.  In
the medical notes, Dr. Rhee described plaintiff as alert,
cooperative and coherent. (Tr. 128)  Plaintiff described having
frequent mood changes and obsessive tendencies. (Tr. 128)  In
addition, plaintiff claimed to experience severe anxiety and

depression.  (Tr. 128)  Dr. Rhee diagnosed dysthymic disorder and bipolar disorder. (Tr. 128)  In response to plaintiff's symptoms of extreme tiredness, plaintiff's medications were adjusted to replacing the Paxil medication with a Topamax and Lexapro combination. (Tr. 105)

 Dr. Rhee described plaintiff on May 1, 2003 as "doing okay" and "more alert". (Tr. 105) Dr. Rhee described plaintiff as having "no psychotic features", "no signs of lethality" and that her "affect is bright". (Tr. 105)  Further, Dr. Rhee found plaintiff's behavior to be in control. (Tr. 105)

Janosian had an independent psychiatric evaluation conducted on July 14, 2003. (Tr. 139)  During this consultation, plaintiff reported that she had difficulty falling asleep three or four nights per week, that she had depressive symptoms four to five nights per week and that she had trouble with depression since the age of 12. (Tr. 139)  Janosian reported that she experienced excessive worry and anxiety when she had to leave her home and that she repeatedly checked the house and unplugged electrical items before leaving home. (Tr. 140)  Plaintiff was reported to have good attention and concentration and was able to perform simple calculations. (Tr. 141)  Plaintiff was able to dress, bathe, and groom herself and mange her own money. (Tr. 141) Plaintiff's daily activities included writing poetry, taking care of her daughter, doing housework, reading and watching television. (Tr. 141)  The

psychologist evaluator found plaintiff to be able to understand simple directions and instructions, perform simple tasks under supervision and concluded that plaintiff could maintain her attention and concentration for simple tasks. (Tr. 141-142) Because of her obsessive compulsive disorder, the evaluator opined that plaintiff would have a marked difficulty performing complex tasks independently and would have a moderate degree of difficulty relating adequately to others. (Tr. 142)

A Psychiatric Review Technique form completed on August 21, 2003 by psychiatrist Dr. George Burnett found that plaintiff had a "mild" degree of difficulty with her daily living activities and in maintaining social functions. (Tr. 154)  In addition Dr. Burnett found she had "moderate" difficulty in maintaining concentration, persistence or pace.  The Mental Residual Functional Capacity Assessment completed by Dr. Burnett found plaintiff to not be significantly limited in her understanding and memory nor her ability to carry out instructions or the ability to maintain a routine schedule. (Tr. 157) She was found "moderately limited" in her ability to maintain attention and concentration for extended periods of time, to complete a normal work day without interruptions and the ability to accept instructions and criticism and respond appropriately to changes in work setting. (Tr. 157-158)

Plaintiff's mental health therapist, Angie Delgosha, completed a Mental Impairment Questionnaire on January 10, 2005 in which she

5

opined that plaintiff had a very good ability to ask simple questions and be aware of normal hazards. (Tr. 168) She also found that plaintiff would have a "good" ability to understand and remember simple instructions, carry out short, simple instructions, maintain regular attendance, and make simple work related decisions. (Tr. 168)  However, Ms. Delgosha found that plaintiff's ability to remember work-like procedures, maintain attention for two hours, sustain an ordinary routine without supervision, work in coordination with others, complete a normal workday without interruptions from psychological symptoms, get along with co-workers and deal with normal work day stress would be "fair", or seriously limited. (Tr. 168)  Finally, she opined that plaintiff's ability to perform at a consistent pace, accept instructions and respond appropriately to change in routine work setting would be "poor or none". (Tr. 168) Similarly, she found plaintiff to not have the ability to understand and remember detailed instructions nor deal with stress of semiskilled work and only a fair ability to interact appropriately with the public. (Tr. 169)

Plaintiff testified that she didn't like to leave her apartment and would only go to the supermarket with her mother or to a park near her home with her daughter. (Tr. 231-233) Plaintiff's mother testified that she took care of plaintiff's daughter most of the time but that they live within walking

6

distance of each other. (Tr. 239)  Her mother worried when she had the child because plaintiff slept so often. (Tr. 240)

Mr. Barry Hensley testified as a vocational expert. (Tr. 244-251) When posited with the hypothetical that a person with moderate limitation in the ability to maintain attention, moderate limitation in the ability to complete a normal work day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, moderate limitation in the ability to accept instructions and respond to criticism and moderate limitation in the ability to respond appropriately to changes in the work setting, Mr. Hensley opined that such a person could find work in the custodial or maintenance field, hand packaging field, a helper in construction industry or assembly field. (Tr. 246-247)

Pursuant to 42 U.S.C. § 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980).  A disability is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual's physical or mental impairment is not disabling under the Act unless it is:

of such severity that he is not only unable to do his
previous work but cannot, considering his age, education
and work experience, engage in any other kind of
substantial gainful work which exists in the national
economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B).  Berry v. Schweiker, 675
F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required
to sue the five step process promulgated in 20 C.F.R. §§ 404.1520
and 416.920.  First, the Commissioner must determine whether the
claimant is engaged in any substantial gainful activity.  Second,
if the claimant is not so engaged, the Commissioner must determine
whether the claimant has a "severe impairment" which significantly
limits her ability to work.  Third, if the claimant does suffer
such an impairment, the Commissioner must determine whether it
corresponds with one of the conditions presumed to be a disability
by the Social Security Commission.  If it does, then no further
inquiry is made as to age, education or experience and the claimant
is presumed to be disabled.  If the impairment is not the
equivalent of a condition on the list, the fourth inquiry is
whether the claimant is nevertheless able to perform her past work.
If she is not, the fifth and final inquiry is whether the claimant
can perform any other work.  Bush v. Shalala, 94 F.3d 40, 44-45
(2d Cir. 1996).

The ALJ found that plaintiff 1) had not engaged in substantial
gainful activity since the date of disability; (2) that plaintiff
had impairments that were severe; (3) that plaintiff did not have

8

an impairment that met or medically equaled the listed impairments in Appendix 1, subpart P, Regulation No. 4; (4) that plaintiff could no longer perform any of her past relevant work; that (5) plaintiff had the residual functional capacity to perform a significant range of work at any level of exertion; and that (6) there are a significant number of jobs in the national economy that she could perform such as custodian, hand packer, construction helper and assembler. (Tr. 19-0)

There is substantial evidence to support the ALJ's conclusion that plaintiff is not totally disabled.  In December, 2001, Dr. Rhee found that plaintiff was alert, cooperative and coherent without overt delusions or hallucinations.  She had average intelligence and her memory for recent and remote events was intact. (Tr. 128, 200) Subsequent treatment notes showed improvement in plaintiff's condition as she took her medications regularly.  Dr. Rhee's notes at various times from 2002 through 2004 indicated that plaintiff was less depressed, her mood brighter and behavior in control. (Tr. 116, 186, 114, 184, 106, 180)

Evidence from examining sources was consistent with mostly normal findings.  Plaintiff was oriented to person, place and time, her attention and concentration were intact and she was able to perform simple calculations. (Tr. 141)

The ALJ fully considered plaintiff's subjective complaints of functional limitations but found that they were not credible.

(Tr. 16, 19)  Plaintiff's allegations were inconsistent with her psychiatric treatment records which showed that plaintiff was responding well to her prescription medications.  Dr. Rhee's notes reveal a patient who had her depression, anxiety and panic under control with no sign of decompensation. (Tr. 110, 176, 182)  The ALJ also found that plaintiff's subjective allegations were inconsistent with her activities. (Tr. 17) Plaintiff maintained her home, performed household chores and cared for her daughter. (Tr. 231-232)

The ALJ's finding that plaintiff retained the residual functional capacity to perform simple, unskilled work at all exertional levels in a low-stress environment provided the tasks were not beyond plaintiff's moderate limitations in maintaining concentration and pace was supported by the totality of the medical evidence.  The findings reported by Dr. Rhee as well as the independent examiners support the finding that plaintiff would be able to follow and understand simple directions and instructions, perform simple tasks under supervision, maintain attention and concentration for simple tasks and learn new tasks. (Tr. 141-142)

Plaintiff argues that the ALJ improperly relied on the opinion of the non-treating physicians giving their opinions greater weight than that of Dr. Rhee or Ms. Delosha.  The opinions of treating sources are only entitled to controlling weight if they are well supported and not contradicted. 20 C.F.R. §§ 404.1527 and 416.927.

The ALJ considered the opinion of Ms. Delgosha, plaintiff's mental health therapist, but concluded that the opinion was not entitled to special weight because a therapist is not an acceptable medical source under the Social Security regulations. (Tr. 15)   The duplicate report to which Dr. Rhees' signature was added and submitted to the Appeals Council does not alter the conclusion. Both reports contain similar functional restrictions which were inconsistent with other evidence in the record.   While Dr. Rhee does opine that plaintiff suffered from depression, mood swings and obsessive compulsive disorder, plaintiff was prescribed medication, Paxil and later Topamax and Lexapro to treat the symptoms.

With the exception of Ms. Delgosha's conclusory opinion that plaintiff is disabled, the objective medical evidence indicates otherwise.  An independent psychologist found plaintiff to be able to understand simple directions and instructions, perform simple tasks under supervision and concluded that plaintiff could maintain her attention and concentration for simple tasks. (Tr. 141-142) Similarly, Dr. Burnett found a "mild" degree of difficulty with her daily living activities and in maintaining social functions. (Tr. 154)   In addition Dr. Burnett found she had "moderate" difficulty in maintaining concentration, persistence or pace but not to be significantly limited in her understanding and memory nor her ability to carry out instructions or the ability to maintain a routine schedule. (Tr. 157)

Finally, plaintiff's own testimony confirmed the medical reports.  Janosian cleaned her own apartment, took care of his daily living needs and even cared for her young daughter. (Tr. 223-233)

CONCLUSION

This Court finds that there is substantial evidence in the record to support the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act. Accordingly, the Commissioner's motion for judgment on the pleadings is granted and the Complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.


                                        S/Michael A. Telesca
                                   _____
                                        MICHAEL A. TELESCA
                                   United States District Judge

DATED:     Rochester, New York
           June 8, 2007